Murtagh, Thomas R., J.
Currently before this court is the plaintiffs’ motion for reconsideration and amended findings of fact and rulings of law on the plaintiffs’ 93A claim. This court, after a juiy-waived trial, found the defendant to have intentionally misrepresented the consequences of maintaining the plaintiffs’ employee on a part-time basis after implementing a pension plan without first making a contribution to that plan on behalf of the employee. Despite the defendant’s misrepresentation, this court held, that the plaintiffs were not entitled to any recovery since there was no reliance on the misrepresentation. After a careful review of the pertinent law, this court ALLOWS the plaintiffs’ motion for reconsideration and hereby issues its amended rulings of law.
FINDINGS OF FACT[1]
Plaintiff Herbert Kimiatek engaged the services of the defendant, James Mendelson, to advise him in connection with his desire to implement a retirement plan for him and his wife on a tax deferred basis. Kimiatek made it clear to Mendelson that he did not want to make contributions on behalf of his long-time employee, Simon Altstein, and that Altstein was not to share in the plan’s benefits.
Mendelson, an experienced pension adviser, informed Kimiatek with certainty that his objectives could be met by implementing a plan of the type recognized under 412(i) of the United States Tax Code (“the plan”) if Altstein was converted to a part-time employee. The plan was established but later challenged by the Internal Revenue Service. In order to save the plan and avoid substantial income tax consequences, Kimiatek included Altstein in the plan by making a substantial contribution on his behalf and additionally paying interest and some penalties. Altst-ein was not converted to a part-time employee until 2004.[2]
Mendelson’s advice that Altstein could remain a part-time employee was entirely wrong. The law did not permit a blanket exclusion of part-time employees from the plan. Further, the plan actually implemented did not provide for such an exclusion. In other words, Altstein’s continuing employment by the company, even as a part-time employee, meant he could not be excluded from the plan and its benefits.
On August 4, 2006, this court ruled that Mendelson not only made a negligent misrepresentation but that the representation was in fact made with a reckless disregard for its truth or falsity, thus amounting to an intentional misrepresentation in violation of G.L.c. 93A, §2.[3] However, the court declined to award the plaintiffs recovery as it found that Kimiatek had not relied on Mendelson’s representations.
AMENDED RULINGS OF LAW
The crux of the plaintiffs’ motion is that this court erred in holding that they were not entitled to recovery because they did not rely on Mendelson’s misrepresentation. A review of the pertinent law reveals the accuracy of the plaintiffs’ legal contentions. “A successful G.L.c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation ...” Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381, 394 (2004), citing Sidney v. Westwood Auto, Inc., 366 Mass. 688, 703 (1975). Rather, the relevant question this court must ask is whether the evidence warrants a finding that “a causal relationship existed between the misrepresentation and the injury.” Heller Financial v. Ins. Co. of North America, 410 Mass. 400, 409 (1991).
1. Liability
Mendelson argues that this court’s ruling did not hold that reliance was a necessary prerequisite to recovery under 93A. Citing to this court’s statement that the plaintiffs “ha[d] not demonstrated that their losses resulted from the misrepresentation,” the defendants argue that this court applied the proper “causal relationship” standard in determining whether the plaintiffs were entitled to recovery and that there is no basis for overturning this finding.
In fact, a review of the previous ruling reveals that this court erroneously applied a “reliance” standard in its determination. Although the language the defendant cites to can be read to suggest that a “causal relationship” standard was applied, a contextual reading of the opinion in its entirely demonstrates that the “resulted from” statement was a ruling which this *64 court felt compelled to make after finding that the plaintiffs had not proved any reliance on the defendant’s misrepresentation. This is clear in the court’s statement that “[t]here was no reliance by plaintiffs on the advice of Mendelson and without such reliance it cannot be said that Mendelson’s misrepresentation caused plaintiffs’ loss.” (Emphasis supplied.) As a result, this court must re-evaluate the evidence in light of the less exacting “causal relationship” standard.
In order to do so, it is first necessary to recognize when the plaintiffs’ injuries actually occurred. For this determination, the court is guided by the Supreme Judicial Court’s recent opinion in Aspinall. In Aspinall, the Court was faced with the question of how to define consumers’ injuries for purposes of potential class certification in a case dealing with the allegedly deceptive labeling of Marlboro Light cigarettes. The defendant argued that the class certification was improper because individual inquiries, i.e., personal smoking behaviors, subjective motivation in purchasing the cigarettes, and reliance on the allegedly misleading advertisements, precluded a finding of “similar injury” necessary to sustain a class certification. In rejecting this argument, the Court held that no individual inquiries were necessary as the “consumers were injured when they purchased a product that, when used as directed, exposed them to substantial and inherent health risks . . . that were not minimized by their choice of the defendants’ ‘light’ cigarettes.” Aspinall, 442 Mass. at 397. Accordingly, the Court found the class members to have suffered, if their allegations were proved, a per se compensable injury regardless of the individuals’ subjective behaviors or motivation. Id. at 402.
Here, the defendant intentionally misrepresented the consequences of implementing the pension plan in violation of 93A. Therefore, the plaintiffs suffered an injury at the precise moment the plan was implemented without first either discharging Altstein or making a contribution on his behalf. In other words, the plaintiffs’ injury was complete and final at this initial moment. Any action that the plaintiffs may or may not have taken after this moment is irrelevant to the question of whether they suffered an injury for purposes of the consumer protection statute. The fact that the plaintiffs later ignored Mendelson’s advice by maintaining Altstein as a full-time employee does not mitigate their injury because it was already suffered in its entirety before the plaintiffs were faced with the decision whether to heed Mendelson’s advice. Thus, like Aspinall, it is improper for this court to delve into the plaintiffs’ subjective actions or motivations when analyzing whether a compensable injury occurred. The fact is that Mendelson intentionally misrepresented the consequences of the plan’s implementation and this misrepresentation could have caused the plaintiffs to act “differently than the way they otherwise would have acted.” Id. at 396. If Mendelson had properly advised the plaintiffs with regard to the pension plan, they would have been faced with the choice of whether to discharge Altstein, make a contribution on his behalf, or forego the plan’s implementation. The choice should have been theirs to make. The defendant’s misrepresentations deprived the plaintiffs of this opportunity. As a result, this court finds that the plaintiffs’ injuries were causally connected to the defendant’s intentional misrepresentations.
2. Damages
This court next turns to the appropriate award of damages. The implementation of the plan without either discharging Altstein or contributing on his behalf caused Kimiatek to make a $100,422 contribution to prevent the plan’s disqualification, pay $15,000 to the IRS as a sanction, and incur $12,000 in attorneys fees for his representation in an IRS audit. As a result, this court hereby finds that the plaintiffs are entitled to $127,422, representing the amount of actual damage suffered by the plaintiffs as a result of the defendant’s misrepresentation.
Pursuant to §11, plaintiffs are entitled to multiple damages if the defendant’s misrepresentations were “wilful or knowing” violations. Despite its element of scienter, not every intentional misrepresentation constitutes “wilful or knowing” behavior for purposes of §11. VMark Software, Inc. v. EMC Corp., 37 Mass.App.Ct. 610, 621 (1994); Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 770 (1st Cir. 1996). Indeed, there must be “something more.” Cambridge Plating Co., Inc., 85 F.3d at 770. “(S)hades of culpability are supposed to matter in applying the punitive damages provision of the statute.” Id. Due to the statute’s deterrent goal, only those “callous and intentional violations” rising to the level of intentional fraud justify the imposition of multiple damages. VMark Software, Inc., 37 Mass.App.Ct. at 623; Damon v. Sun Co., Inc., 87 F.3d 1467, 1485 (1st Cir. 1996).
Deciphering what conduct amounts to a “callous and intentional violation” is not an easy task. This court has found guidance in decisions of the federal court applying 93A. In Cambridge Plating Co., Inc., 85 F.3d at 770, the plaintiff purchased a defective wastewater treatment system from the defendant. The trial court found that the defendant had intentionally misrepresented the fact that a crucial component of the system was not in actuality constructed. Despite knowing of the non-existence of this component, the defendant repeatedly refused to disclose this to the plaintiff in the face of consistent inquiries regarding the problem. The court found the defendant liable under 93A and imposed multiple damages for its wilful and knowing violation. On appeal, the First Circuit affirmed the defendant’s liability but reversed the trial court’s imposition of multiple damages. The court noted that the defendant had some reason to believe that the problem was not due to the missing component and that it did not act maliciously towards the *65 plaintiff or remain silent in order to watch the plaintiff suffer. Id. at 770. Rather, this was a case where the defendant “simply ignored the problem hoping that it would somehow resolve itself.” Id. These actions, the court found, did not rise to a level of callousness that would justify the imposition of multiple damages. Id.
Contrast this behavior with that which existed in Arthur D. Little Intern., Inc. v. Dooyang, 979 F.Sup. 919 (D.Mass. 1997). In that case, the plaintiff contracted with the defendant to provide consulting services in connection with the proposed construction of an aluminum smelting plant. The defendant made intentional misrepresentations with regard to its intention to compensate the plaintiff for its services. Finding that the defendant engaged in “deliberately deceptive and entirely disdainful behavior,” the court distinguished Cambridge Plating and VMark as cases that did not have that “something more” needed for the imposition of multiple damages. In contrast, “[t]he existence of bad faith conduct amounting to commercial extortion, which drove [the plaintiff] to costly litigation as its only method of recoupment, propels this case beyond these single-damages cases to the level of ‘callous’ intentional conduct that directs multiple damages.” Id. at 927. As a result, the court awarded double damages.
The present case is more akin to the facts established in Cambridge Plating than to those found in Arthur D. Little. Here, Mendelson did not act maliciously toward the plaintiffs. There is no credible evidence to suggest that Mendelson provided the erroneous advice in order to watch the plaintiffs suffer or to reap any personal financial benefit. Rather, the evidence suggests that Mendelson provided the erroneous advice hoping that he was correct but knowing that he did not know. Far from the type of behavior amounting to “commercial extortion,” the defendant’s actions were, in essence, those of somebody who “simply ignored the problem hoping that somehow it would resolve itself.” Cambridge Plating Co., Inc., 85 F.3d at 770. It is not the iype of behavior which rises to such a level of egregiousness that warrants the imposition of this “extraordinary damage penalty.” VMark Software, Inc., 37 Mass.App.Ct. at 623. As a result, this court finds that the defendant’s misrepresentation was not made wilfully or knowingly.
As such, the plaintiffs are entitled to recover from the defendant only their actual damages and an amount corresponding to reasonable attorneys fees and costs incurred in this action. Within 10 days of entry of this order, the plaintiffs are instructed to submit an affidavit to this court detailing their demand for reasonable fees and costs and to furnish such copy to the defendant in order to provide him an opportunity to object to the plaintiffs’ proposed figures. If the defendant objects, he should file an opposition within 10 days of receiving the plaintiffs’ affidavit and the court will then schedule a hearing.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment in the amount of $127,422 with reasonable attorneys fees and costs is to enter for the plaintiffs on their 93A claim.

The findings of fact remain unmodified from this court’s original order of August 4, 2006 and are hereby incorporated in the present opinion. Consequently, only the findings relevant to the current motion are repeated below.

The plaintiffs urge this court to amend its findings of fact to reflect that Simon Altstein was employed on a part-time basis beginning in the summer of 2001. This court declines to amend its previous finding that Altstein remained a full-time employee until 2004 and relies on its original order in that regard.

The claim for vicarious liability against the defendant Robert N. Cohen had been dismissed voluntarily by the plaintiff on April 20, 2006.